IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

11 MAY 10 PM 4: 28

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

PLANNED PARENTHOOD OF INDIANA, )
INC.; DR. MICHAEL KING, M.D.; CARLA )
CLEARY, C.N.M.; LETITIA CLEMONS, and )
DEJIONA JACKSON, by her guardian and )
next friend JACKIE GRUBBS, )
                                   )
            Plaintiffs,            )
                                   )
       v.                          )   No.
                                   )   1:11-cv-0630 TWP -TAB
COMMISSIONER OF THE INDIANA        )
STATE DEPARTMENT OF HEALTH, in his )
official capacity; DIRECTOR OF THE )
INDIANA STATE BUDGET AGENCY, in    )
his official capacity; COMMISSIONER OF )
THE INDIANA DEPARTMENT OF          )
ADMINISTRATION, in his official capacity; )
SECRETARY OF THE INDIANA FAMILY    )
AND SOCIAL SERVS. ADMINISTRATION,  )
in his official capacity; official capacity; THE )
PROSECUTOR OF MARION COUNTY, in    )
his official capacity; THE PROSECUTOR OF )
MONROE COUNTY, in his official capacity; )
and THE PROSECUTOR OF TIPPECANOE   )
COUNTY, in his official capacity,  )
                                   )
            Defendants.            )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND
CHALLENGING THE CONSTITUTIONALITY OF STATE STATUTE**

**Introductory Statement**

1.  On May 10, 2011, the Governor of the State of Indiana signed into law House Enrolled

    Act 1210, the relevant portions of which are now codified at Indiana Code § 5-22-17-5.5

1

and Indiana Code § 16-34-2-1.1. As enacted, the former statute prohibits any agency of the State of Indiana from entering into a contract with or making a grant to any entity that performs abortions or maintains or operates a facility where abortions are performed, even through the state funds are not utilized to provide abortions. This statute also cancels any previously appropriated funds due to such an entity, and commands the Indiana State Budget Agency to determine that funds are no longer available to pay for even pre-existing grants or contractual obligations. The latter statute provides that, prior to the receipt of an abortion a woman must be informed, among other things, that "human physical life begins when a human ovum is fertilized by a human sperm" and "objective scientific information shows that a fetus can feel pain at or before twenty (20) weeks of postfertilization age."

2. Planned Parenthood of Indiana, Inc. ("PPIN"), is the Indiana affiliate of Planned Parenthood of America, Inc., and provides persons in Indiana with a wide range of family planning and medical services through multiple offices located throughout the State. These services include performing abortions in Indiana and maintaining or operating several facilities in Indiana at which abortions are performed. Letitia Clemons and Dejiona Jackson are women enrolled in the Medicaid program who routinely receive non-abortion related services, reimbursable by the Medicaid program, at and from PPIN. HEA 1210, as enacted, serves to cancel and/or impair several pre-existing contracts that various state agencies have entered into with PPIN, and to this extent is unconstitutionally violative of the Contract Clause of the United States Constitution. Moreover, HEA 1210 prohibits Ms. Clemons and Ms. Jackson from obtaining Medicaid-reimbursed for services from her provider of choice—PPIN—and is therefore violative of

       federal Medicaid law. The grants and/or contracts that PPIN receives from state agencies in Indiana all concern federal monies from federal programs governed by federal standards, and to the extent that HEA 1210 imposes additional qualifications for receipt of these monies it is preempted by federal law. Finally, the statute requires PPIN to choose between engaging in the constititutionally protected activity of providing abortion careand receiving monies unrelated to the provision of abortions. This is an unconstitutional condition and invalidates the statute.

3. Dr. Michael King, M.D., and Carla Cleary, C.N.M., are employees of PPIN who are responsible—both directly and, in the case of Dr. King, directly and through delegation—for informing women desiring abortions that "human physical life begins when a human ovum is fertilized by a human sperm" and "objective scientific information shows that a fetus can feel pain at or before twenty (20) weeks of postfertilization age." The former statement is not a statement of fact but a misleading statement of philosophical and religious belief and compelling the message violates the First Amendment rights of the plaintiffs, who all object to this compelled speech. The latter statement, as applied to these plaintiffs, who do not perform abortions after the first trimester of pregnancy, is untruthful, misleading, and irrelevant, thereby also violating the First Amendment rights of these plaintiffs to be free from compelled speech.

**Jurisdiction, Venue, and Cause of Action**

4. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

7. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States, and as a pre-emption claim brought pursuant to the decision of the United States Supreme Court in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (holding that a plaintiff presenting a pre-emption claim "presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve" even in the absence of a cause of action under 42 U.S.C. § 1983).

**Parties**

8. Planned Parenthood of Indiana, Inc. ("PPIN"), is a not-for-profit corporation with its principle place of business in Indianapolis, Indiana.

9. Dr. Michael King, M.D., is a medical practitioner, licensed by the State of Indiana, who performs abortions and abortion-related services for PPIN.

10. Carla Cleary, C.N.M., is a certified nurse midwife, licensed by the State of Indiana, who assists with providing abortion-related services for PPIN.

11. Letitia Clemons is an adult resident of Shelby County, Indiana.

12. Dejiona Jackson is an 18-year-old resident of Marion County, Indiana. She brings this action by her aunt, guardian, and next friend Jackie Grubbs.

13. The Commissioner of the Indiana State Department of Health is the duly appointed official in charge of that agency, and is sued in his official capacity.

14. The Director of the Indiana State Budget Agency is the duly appointed official in charge of that agency, and is sued in his official capacity.

15. The Commissioner of the Indiana Department of Administration is the duly appointed official in charge of that agency, and is sued in his official capacity.

16. The Secretary of the Indiana Family and Social Services Administration is the duly appointed official in charge of that agency, and is sued in his official capacity.

17. The Prosecutor of Marion County is the duly elected official responsible for prosecuting criminal offenses in Marion County, Indiana, and is sued in his official capacity.

18. The Prosecutor of Monroe County is the duly elected official responsible for prosecuting criminal offenses in Monroe County, Indiana, and is sued in his official capacity.

19. The Prosecutor of Tippecanoe County is the duly elected official responsible for prosecuting criminal offenses in Tippecanoe County, Indiana, and is sued in his official capacity.

**The Challenged Statute**

20. On April 27, 2011, the Indiana General Assembly passed House Enrolled Act 1210 ("HEA 1210"), which was signed by the Governor on May 10, 2011, and portions of which went into effect immediately upon the Governor's signature.

*Funding Restrictions*

21. As enacted, HEA 1210 provides in part as follows:

> (b) An agency of the state may not:
> (1) enter into a contract with; or
> (2) make a grant to;
> any entity that performs abortions or maintains or operates a facility where abortions are performed that involves the expenditure of state funds or federal funds administered by the state.
>
> (c) Any appropriations by the state:
> (1) in a budget bill;
> (2) under IC 5-19-1-3.5; or
> (3) in any other law of the state;
> to pay for a contract with or grant made to any entity that performs abortions or maintains or operates a facility where abortions are performed is canceled, and the money appropriated is not available for payment of any contract with or grant made to the entity that performs abortions or maintains or operates a facility where abortions are performed.

>    (d) For any contract with or grant made to an entity that performs abortions or maintains or operates a facility where abortions are performed covered under subsection (b), the budget agency shall make a determination that funds are not available, and the contract or grant shall be terminated under section 5 of this chapter.

IND. CODE § 5-22-17-5.5(b)–(d) (effective May 10, 2011).

22. This portion of HEA 1210 does not apply to "hospitals licensed under IC 16-21-2 or ambulatory surgical centers licensed under IC 16-21-2." IND. CODE § 5-22-17-5.5(a) (effective May 10, 2011).

23. This portion of HEA 1210 went into effect on May 10, 2011, the day it was signed by the Governor.

*Informed Consent*

24. Under Indiana law, at least eighteen (18) hours prior to performing an abortion, and in the presence of the pregnant woman, certain information must be provided by "the physician who is to perform the abortion, the referring physician or physician assistant, an advanced practice nurse, or a midwife to whom the responsibility has been delegated by the physician who is to perform the abortion or the referring physician." IND. CODE § 16-34-2-1.1(a)(1).

25. HEA 1210 mandates that this information be provided both "orally and in writing" and that this information include, *inter alia*, the following:

>    (E) That human physical life begins when a human ovum is fertilized by a human sperm.
>
>    * * *
>
>    (G) That objective scientific information shows that a fetus can feel pain at or before twenty (20) weeks of postfertilization age.

IND. CODE § 16-34-2-1.1(a)(1)(E),(G) (effective July 1, 2011).

26. "Objective scientific information" is defined by HEA 1210 as "data that have been reasonably derived from scientific literature and verified or supported by research in compliance with scientific methods." IND. CODE § 16-18-2-254.2 (effective July 1, 2011).

27. "Postfertilization age" is defined by HEA 1210 as "the age of the fetus calculated from the date of the fertilization of the ovum." IND. CODE § 16-18-2-287.5 (effective July 1, 2011).

28. This portion of HEA 1210 is scheduled to go in effect on July 1, 2011.

**General Factual Allegations**

29. Planned Parenthood of Indiana, Inc. ("PPIN") is a not-for-profit organization that performs abortions in Indiana and that maintains and operations several facilities throughout Indiana where abortions are performed. In addition to performing abortions and maintaining and operating facilities where abortions are performed, PPIN provides a host of family planning and other social services to its patients at numerous offices and clinics throughout Indiana.

## COUNT ONE: FUNDING RESTRICTIONS

**Factual Allegations**

30. PPIN is not a hospital licensed under IC 16-21-2 or an ambulatory surgical center licensed under IC 16-21-2.

31. PPIN provides services reimbursable and reimbursed through the Medicaid program, such as family planning services and preventive primary care, which helps prevent unintended pregnancies through contraception, reduce the spread of sexually transmitted

diseases through testing and treatment, and which also includes screening for cervical and other cancers.

32. Although PPIN also provides and performs abortions, these services are generally not reimbursed through the Medicaid program or through any other state or federal funding. However, abortions that are performed when the pregnancy occurred as a result of rape or incest, and where the pregnant woman presents a police report to that effect, are reimbursable by and reimbursed through the Medicaid program.

33. Letitia Clemons is a low-income woman who is enrolled in the Medicaid program in Indiana, and who receives Medicaid-reimbursed services provided at or by PPIN.

34. Ms. Clemons does not receive abortion-related services from PPIN.

35. Ms. Clemons wishes to continue receiving services from or at PPIN that are to be reimbursed by the Medicaid program, and PPIN is qualified to perform these services.

36. Dejiona Jackson is also a low-income woman who is enrolled in the Medicaid program in Indiana, and who receives Medicaid-reimbursed services provided at or by PPIN. She is enrolled in traditional Medicaid, and not Hoosier Healthwise or the Healthy Indiana Plan, and does not obtain Medicaid services through a managed care organization.

37. Ms. Jackson does not receive abortion-related services from PPIN.

38. Ms. Jackson wishes—and Jackie Grubbs, her aunt and legal guardian, wishes for her—to continue receiving services from or at PPIN that are to be reimbursed by the Medicaid program, and PPIN is qualified to perform these services.

39. PPIN has entered into several contracts with and/or received several grants from or through state agencies that are currently in effect. These contracts are as follows:

    a. PPIN is enrolled in the Medicaid program as a provider of family planning and related services, which requires it to enter into a contract known as a "Provider

Agreement" with the Indiana Family and Social Services Administration. A true and correct copy of this Provider Agreement is attached and incorporated herein as Exhibit 1 (although the attachment is unsigned, this agreement has been signed by all required parties).

b. PPIN receives two (2) Disease Intervention Services (DIS) grants for a total of one hundred fifty thousand dollars ($150,000.00) from the Indiana State Department of Health. These grants are made through the federal Preventive Health Services Block Grant Program, 42 U.S.C. § 247c, *et seq.*, and are utilized by PPIN to provide education, prevention, and treatment services related to sexually transmitted diseases. It is not utilized to perform abortions or abortion-related services. These grants expire on December 31, 2011, and true and correct copies of these grant agreements are attached and incorporated herein as Exhibits 2-1 and 2-2.

c. PPIN receives a grant through Title V of the Social Security Act ("Title V"), 42 U.S.C. § 701, *et seq.*, for providing maternal and child health services. This grant totals $368,679.00. Through Title V, the federal government provides a block grant to Indiana, which has sub-granted with the Indiana Family Health Council ("IFHC"), which has in turn sub-granted with PPIN to provide the qualifying maternal and child health services. Notwithstanding the fact that this money flows from the state to IFHC and from IFHC to PPIN, on information and belief the Indiana State Department of Health interprets Indiana Code § 5-22-17-5.5 to apply to this grant. This grant is not utilized to perform abortions or abortion-related services. It expires on September 30, 2011, and a true and correct copy of this grant agreement is attached and incorporated herein as Exhibit 3.

d. PPIN receives a grant through Title XX of the Social Security Act ("Title XX"), 42 U.S.C. § 1397, *et seq.*, for providing certain social services. This grant totals $263,497.00. Through Title XX, the federal government provides a block grant to Indiana, which has sub-granted with the Indiana Family Health Council ("IFHC"), which has in turn sub-granted with PPIN to provide the qualifying services. Notwithstanding the fact that this money flows from the state to IFHC and from IFHC to PPIN, on information and belief the Indiana State Department of Health interprets Indiana Code § 5-22-17-5.5 to apply to this grant. This grant is not utilized to perform abortions or abortion-related services. It expires on September 30, 2011, and this grant agreement is part of the same document that contains PPIN's Title V grant (and is attached and incorporated herein as Exhibit 3).

These four (4) contracts and/or grants are collectively referenced herein as "the grants" or "the applicable grants." On information and belief, the DIS grant, the Title V grant, and the Title XX grant all utilize exclusively federal monies, even though they rely on the

state and/or state agencies to appropriate these monies and/or to contract for or grant their distribution.

40. PPIN meets all eligibility requirements to receive the grants, and will continue to meet all eligibility requirements to receive the grants in the future. PPIN (including entities that would become PPIN) has been enrolled in the Medicaid program as a provider continuously since shortly after this program was initiated, has received a DIS grant continuously since at least 1996, has received a grant under Title V continuously since 1968, and has received a grant under Title XX continuously since at least 1991.

41. But for the enactment of HEA 1210, PPIN would receive a renewal of each of the grants following the expiration of the current grant agreements.

42. Additionally, insofar as each of the grants is currently in effect (and was in effect prior to the enactment of HEA 1210), the enactment of HEA 1210 will prevent the applicable state agencies from fulfilling their obligations to PPIN under the grants and/or contracts. These contracts will therefore be substantially impaired, and no significant public interest exists in favor of the impairment of these contracts.

43. PPIN has estimated that it will lose more than one million dollars if the applicable grants are removed.

44. PPIN has estimated that because of the loss of the applicable grants it will have to close thirteen (13) of its health centers.

45. These health centers serve 33,577 patients.

46. The loss of the applicable grants will require PPIN to lay off fifty-two (52) full-time employees and will severely injure its ability to function.

47. PPIN is largest, if not the only, entity in the State of Indiana that is currently subject to loss of funding because of HEA 1210.

48. As a result of the actions or inactions of the defendants, the plaintiffs are experiencing irreparable harm for which there is no adequate remedy at law.

49. The defendants have, at all times, acted or refused to act under color of state law.

**Legal Claims as to Count One**

50. To the extent that HEA 1210 applies to contracts and/or grants currently in effect, or that were executed prior to the effective date of HEA 1210, this statute violates the Contract Clause of the United States Constitution, U.S. CONST. art. I, § 10, cl. 1.

51. To the extent that HEA 1210 applies to limit the providers from whom Letitia Clemons may receive Medicaid-reimbursed services, and to prevent the receipt of reimbursement for services by PPIN, this statute violates Section 1396a(a)(23) of the Medicaid Act and accompanying regulations.

52. To the extent that HEA 1210 applies to prevent PPIN from receiving grants and/or contracts under the Preventive Health Services Block Grant Program, Title V, Title XX, or the Medicaid program, even though PPIN meets all other program requirements created by federal law, the statute is preempted by federal law.

53. To the extent that HEA 1210 requires PPIN to choose between performing abortions or receiving the non-abortion related funding, the statute imposes an unconstitutional condition and is invalid.

COUNT TWO: COMPELLED SPEECH

54. PPIN only provides abortion services to women who are in their first trimester of pregnancy.

11

55. The first trimester consists of the first twelve (12) weeks postfertilization

56. On information and belief, the only location in Indiana where abortions are performed on women who are past their first trimester of pregnancy is at the Well Women's Center located at Wishard Memorial Hospital in Indianapolis.

57. Abortions subsequent to the first trimester of pregnancy represent a very small minority of the total abortions performed in Indiana.

58. Indeed, the most recent statistics from the Indiana State Department of Health disclose that in 2007, the last year published, there were 10,877 "terminated pregnancies" in Indiana and more than 92%, or at least 10,025, involved pregnancies that had lasted twelve (12) weeks or less. These statistics are attached and incorporated herein as Exhibit 4.

59. Dr. Michael King, M.D., provides abortion and abortion-related services for PPIN patients in Marion County, Monroe County, and Tippecanoe County at facilities owned and operated by PPIN. He does not provide abortions elsewhere and all abortions that he performs are for women in the first trimester of their pregnancies.

60. Although at times Dr. King delegates the responsibility to give the informed consent information required by Indiana law, as allowed by Indiana Code § 16-34-2-1.1(a)(1), he also provides the informed consent himself at times to patients at PPIN who wish to obtain abortions.

61. Carla Cleary, C.N.M., is a certified nurse midwife, as defined by Indiana law (and licensed as such under Indiana law), who provides the informed consent information to PPIN patients receiving abortion services from PPIN in Marion County, Indiana. This responsibility has been delegated to her by the physician who is to perform the

        abortion(s) or the referring physician in accordance with Indiana Code § 16-34-2-1.1(a)(1).

62. The Indiana State Department of Health regulates the practice of abortions in Indiana through a series of regulations, *see* 410 IAC 26-1-1, *et seq.*, as well as through enforcement of Indiana statutes. IND. CODE §§ 16-21-2-2(4); 16-34-1-1, *et seq.*

63. Although a small minority of scientists and doctors believe that a fetus can feel pain in the late second trimester or early third trimester of pregnancy, there is universal scientific consensus that a fetus does not have sufficient biological development to feel pain during the first trimester of pregnancy.

64. Nevertheless, Indiana Code § 16-34-3-1.1(1)(G) (effective July 1, 2011) now requires that PPIN and its employees and contractors, including Dr. King and his designees (such as Nurse Cleary) inform their patients that there is objective scientific information that the fetus can feel pain at or before twenty (20) weeks postfertilization.

65. Given that all of PPIN's patients, as well as the patients of Dr. King and Nurse Cleary, are and will be within their first trimester of pregnancy at the time that the abortion is performed, informing them that there is evidence that the fetus can feel pain at or before twenty (20) weeks postfertilization is irrelevant, misleading, and untruthful to the extent it implies that an embryo or fetus in the first trimester may experience pain.

66. Additionally, the term "human physical life" is not defined in Indiana Code § 16-34-2-1.1 or elsewhere in Indiana law, although the term "human being" is defined in Indiana Code § 35-41-1-14 as "an individual who has been born and is alive."

67. The term "human physical life" has no definitive medical or scientific meaning.

68. There are religions and philosophies that believe that human physical life begins at conception. However, there are other religions and philosophies that have different views of when life begins.

69. The phrase "human physical life begins at conception," is not a statement of fact, but an endorsement of a particular religious, theological, and/or philosophical viewpoint.

70. None of the plaintiffs believes that human physical life begins at conception and they object to being forced to give this mandatory information to their patients inasmuch as it is not a statement of fact but a subjective position taken by the State of Indiana with which they disagree.

71. All of the plaintiffs also object to being forced by the State of Indiana to enunciate a theological or philosophical position on when life begins with which they do not agree.

72. All of the plaintiffs strongly object to having to give this irrelevant, misleading, and untruthful information, but they are compelled to do so by Indiana Code § 16-34-3-1.1(1)(G) (effective July 1, 2011).

73. Despite the fact that the plaintiffs object to the new informed consent language required by Indiana Code § 16-34-2-1.1(a)(1)(E) (effective July 1, 2011) and Indiana Code § 16-34-2-1.1(a)(1)(G) (effective July 1, 2011), they are required to use this language with their patients and provide this information to their patients because failure to do so will prevent informed consent from being given and may lead to criminal liability (IND. CODE § 16-34-2-7), and/or to the loss of PPIN's licensure (IND. ADMIN. CODE tit. 410, r. 26-2-28).

74. The plaintiffs are being caused irreparable harm for which there is no adequate remedy at law.

75. At all relevant times defendants have acted or refused to act under color of state law.

**Legal Claims as to Count Two**

76. To the extent that Indiana Code § 16-34-3-1.1(a)(1)(E) (effective July 1, 2011) requires that patients be told that human physical life begins at conception, the statute violates the First Amendment because it compels the plaintiffs, over their objections, to give information that is a mere opinion of the State of Indiana and is not a fact and is therefore not truthful.

77. As applied to the plaintiffs, who do not perform abortions after the first trimester of pregnancy, Indiana Code § 16-34-3-1.1(a)(1)(G) (effective July 1, 2011), which requires that patients be informed that there is objective scientific evidence that the fetus can feel pain at or before twenty (20) weeks postfertilization, is violative of the First Amendment insofar as it compels the plaintiffs to provide information that is not relevant or truthful to their patients and is misleading.

**REQUEST FOR RELIEF AS TO ALL COUNTS**

**WHEREFORE,** the plaintiffs respectfully request that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Declare that the defendants have violated the rights of the plaintiffs for the reasons specified above.

3. Issue a preliminary injunction, later to be made permanent, enjoining the defendants from enforcing the challenged provisions of HEA 1210.

4. Award the plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

5. Award all other proper relief.

_____
Kenneth J. Falk, Ind. Bar No. 6777-49

_____
Gavin M. Rose, Ind. Bar No. 26565-53

_____
Jan P. Mensz
Member, New York Bar and the Bar of this Court

ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN  46202
Ph:     317-635-4059
Fax:    317-635-4105
<kfalk@aclu-in.org>
<grose@aclu-in.org>
<jmensz@aclu-in.org>

Roger K. Evans[*]
Planned Parenthood Federation of America
434 W. 33rd Street
New York, NY  10001
Ph:     212-541-7800


Talcott Camp*
American Civil Liberties
        Union Foundation
Reproductive Freedom Project
125 Broad Street, 18th Floor
New York, NY  10004

*Attorneys for the Plaintiffs*

---

[*] Application for admission *pro hac vice* to be filed.