# EXHIBIT
# 2-2



Mitchell E. Daniels, Jr.
*Governor*

Gregory N. Larkin, M.D., F.A.A.F.P.
*State Health Commissioner*

## Indiana State
## Department of Health
*An Equal Opportunity Employer*

December 14, 2010

Liz Carroll
Vice President Patient Services
Planned Parenthood of Indiana, Inc.
200 South Meridian Street
#400
Indianapolis, IN 46202

We are enclosing a copy of the <u>completed agreement</u> A70-0-112148 (STD 223-4) for our financial assistance as indicated on the enclosed documents.

You will be receiving further information from our Purchasing Department regarding details on how to submit your invoice.

If we can be of any further assistance, please contact the Contract & Audit Section of the Division of Finance at (317) 233-7398.

Sincerely,

Joseph Olivadoti, Supervisor
Contract & Audit Section
Division of Finance
Indiana State Department of Health

Enclosure
cc: Sharon Lankford
ISDH Purchasing

2 North Meridian Street • Indianapolis, IN 46204
317.233.1325 tdd 317.233.5577
www.statehealth.in.gov

*The Indiana State Department of Health supports Indiana's economic prosperity and quality of life by promoting, protecting and providing for the health of Hoosiers in their communities.*



61910-573100-4003610141610
STD 223-4

**Amendment No. 1**
**EDS Number A70-0-112148**

This is an Amendment to the existing Sexually Transmitted Diseases Grant Agreement entered into by and between the **Indiana State Department of Health** (hereinafter referred to as the "State") and **Planned Parenthood of Indiana, Inc.** (hereinafter referred to as the "Grantee") for the period from January 1, 2010 through December 31, 2010, in the amount of $100,000.

In consideration of the mutual undertakings and covenants hereinafter set forth, the parties agree as follows:

The amount of the Grant Agreement is being increased by $100,000 making the new total of the Grant Agreement $200,000. The additional funds will be used to continue implementing Disease Intervention Services (DIS) and Partner Services (PS) in accordance with program standards established by the ISDH and applicable state and federal statutes. See Attachment B, attached hereto, and made a part hereof and incorporated herein by reference as a part of this Grant Agreement. The expiration date of this Grant Agreement is being extended to December 31, 2011.

The following paragraph replaces the previous Grant Agreement paragraph:

Paragraph 20A – **Additional Payment Terms** is amended to read:

The State disburses Grant funds on a cost reimbursement basis. Actual expenditures of authorized costs will be reimbursed monthly by the State upon receipt of duly executed Invoices from the Grantee. Invoices shall be due by the 20th day after the end of each month. Payments shall not exceed $100,000 for the period of January 1, 2010 through December 31, 2010, and $100,000 for the period of January 1, 2011 through December 31, 2011. Total remuneration under this Grant Agreement shall not exceed $200,000.

Paragraph 20B is amended to read:

All accounts will be closed sixty (60) days after the end of each Grant Agreement period as specified in Paragraph 20A. Any invoice submitted after sixty (60) days will not be reimbursed by the State.

**Funding Summary**

| | | |
|---|---|---|
| 61910-573100-4003610141610 | 01/01/10 through 12/31/10 | $100,000 |
| 61910-573100-4003610141610 | 01/01/11 through 12/31/11 | 100,000 |
| Total | | $200,000 |

All other matters previously agreed to and set forth in the original Grant Agreement and not affected by this Amendment shall remain in full force and effect.

**Non-Collusion and Acceptance**

The undersigned attests, subject to the penalties of perjury, that he/she is the Grantee, or that he/she is the properly authorized representative, agent, member or officer of the Grantee, that he/she has not, nor has any other member, employee, representative, agent or officer of the Grantee, directly or indirectly, to the best of his/her knowledge, entered into or offered to enter into any combination, collusion or agreement to receive or pay, and that he/she has not received or paid any sum of money or other consideration for the execution of this Grant Agreement other than that which appears upon the face hereof.

**The rest of this page has been left blank intentionally.**

**In Witness Whereof,** the Grantee and the State of Indiana have, through duly authorized representatives, entered into this Grant Agreement Amendment. The parties having read and understanding the foregoing terms of the Grant Agreement Amendment do by their respective signatures dated below agree to the terms thereof.

Accepted By:

~~LIZ CARROLL~~  Suzannah Wilson Overholt
VICE PRESIDENT ~~PATIENT SERVICES~~ Finance & Admin.
PLANNED PARENTHOOD OF INDIANA, INC.

DATE: 11 | 18 | 10

Certification of Funds:

ALLEN L. COLLIER
DIRECTOR OF FINANCE
DIVISION OF FINANCE
OPERATIONAL SERVICES COMMISSION
INDIANA STATE DEPARTMENT OF HEALTH

DATE: 11-23-10

Recommended and Approved By:

MICHAEL R. KISTLER
CHIEF FINANCIAL OFFICER
OPERATIONAL SERVICES COMMISSION
INDIANA STATE DEPARTMENT OF HEALTH

DATE: 11-23-10

Approved:

ROBERT D. WYNKOOP    For
COMMISSIONER
DEPARTMENT OF ADMINISTRATION
STATE OF INDIANA

DATE: 11.24.10

Approved:

ADAM M. HORST, DIRECTOR    for
STATE BUDGET AGENCY
STATE OF INDIANA

DATE: 11-30-2010

Approved as to Form and Legality:

GREGORY F. ZOELLER    for
ATTORNEY GENERAL OF INDIANA

DATE: 12-3-10

Grant – STD

Attachment B

Planned Parenthood of Indiana, Inc.

For the Period January 1, 2011 to December 31, 2011

Amount Awarded

100,000.00

| EXPENSE | COST |
|---|---|
| Salary | $65,000.00 |
| Fringe | 14,736 |
| Supplies | 1,400 |
| Travel | 9,000 |
| Rent/Utilities | 6,864 |
| Other | 3,000 |
| | |
| **Total Expense** | **$100,000** |

1. No changes or additions to these terms may be made unless the Indiana State Department of Health (hereinafter State) Sexually Transmitted Disease (hereinafter STD) Program Director is consulted and an amendment of the Grant Agreement is executed.

2. In collaboration with the State STD Prevention Program, the grantee will establish and submit written objectives and set goals that are commensurate with the State and federal STD cooperative agreement objectives. The written objectives and goals will be submitted to the assigned STD Prevention Specialist by January 15, 2011 in the logic model format.

3. The grantee will be required to implement Disease Intervention Specialist (hereinafter DIS) services and Partner Services (hereinafter PS) in accordance with program standards and policy guidelines established by the ISDH and applicable state and federal statutes.

4. The grantee will integrate disease intervention services for Chlamydia, gonorrhea, HIV and syphilis infections at the client level.

5. As a the grantee operating a full-time (5day/week STD services) STD Clinic the grantee will restrict DIS clinic activity to interviewing clients infected with Chlamydia, gonorrhea, HIV and syphilis only.

6. As a grantee operating a full-time STD clinic the grantee will have DIS interview 100% of all clinic patients diagnosed with Chlamydia, gonorrhea, HIV and syphilis.

7. DIS operating under this contract will verify treatment status of 100% of all chlamydia, gonorrhea, and syphilis diagnosis reported in their assigned district within 30 days of receipt of report.

8. DIS operating under this contract will enter all non-electronically reported cases diagnosed with chlamydia, gonorrhea, and syphilis within 5 working days of receipt of report.

9. The grantee will implement partner services immediately upon receipt of notification of diagnosis.

10. The grantee will provide partner services to all newly diagnosed and assigned persons testing positive for HIV and perform any other duties for HIV positive persons assigned by the ISDH Division of HIV, STD, Viral Hepatitis, on an HIV positive person residing in the following counties: Blackford, Decatur, Deleware, Fayette, Franklin, Grant, Henry, Howard, Madison, Randolph, Rush, Tipton, Union, Wayne (hereinafter District 6).

11. DIS funded under this agreement will return all DIS follow-up forms generated by the HIV and STD surveillance program within 30 days of the SWIMSS initiation date.

12. DIS funded under this contract will have 90% of locatable sex and needle sharing partners to HIV examined within 7 days of assignment.

13. The grantee will link (by actively helping index patients with newly diagnosed or newly reported HIV infection to access medical care either directly or by linking them to HIV care coordination.) 100 % of locatable identified persons as infected with HIV to medical and prevention services in District 6.

14. The grantee will provide partner services to all newly diagnosed and assigned persons testing positive for early syphilis in District 6.

15. DIS funded under this contract will have 90% of locatable partners to Chlamydia examined within 7 days of assignment.

16. DIS funded under this contract will have 90% of locatable sex partners to gonorrhea examined within 7 days of assignment.

17. DIS funded under this contract have 90% of locatable sex partners to syphilis examined within 7 days of assignment.

18. The grantee will collaborate with internal and external partners involved in all aspects of partner services, including ensuring that partner services throughout the prevention and care continuum are available for all persons infected with HIV.

19. The grantee will assure that all client interviews are correctly entered into SWIMSS no later than 72 hours after the original interview.

20. The grantee will report on the established goals and objectives by the 15th day of the month following the end of the quarter to their assigned STD Prevention Specialist using a narrative format.

21. The grantee agrees to maintain client records in a secure and confidential manner. Computer systems containing client information must be protected with multiple passwords. Office equipment that is used for storing confidential materials must be locked when not in use. Providers must adopt and adhere to written policies and procedures which specify that client information is considered confidential, privileged information. The provider must possess a written policy which limits access to client records to only designated clinic staff. Release of information to entities other than those noted herein must be preceded by the written consent of the client or legal representative, except as demanded under state statutes. These policies and procedures must include provisions for discipline should violations occur.

22. The grantee agrees to have Internet access and meet system requirements required by the Indiana Office of Technology and Compliance when accessing SWIMSS or EvaluationWeb© system.

23. The grantee agrees to provide the assigned STD Prevention Specialist a copy of their internet partner notification services policy by January 15, 2011.

24. The grantee agrees to submit all HIV materials (brochures, videos, promotional, etc.) used as educational materials to the HIV Program Review Panel for approval.

25. The grantee agrees that all DIS funded under this contract will satisfactorily complete the following trainings. Even with personnel changes within the funded entity, staff will maintain the appropriate training:

    - Basic HIV, STD, Viral Hepatitis, and TB Training as Recommended by CDCs Program Collaboration and Integration Services (PICS) initiative.
    - Annual Confidentiality Review Webinar
    - Indiana State Department of Health's HIV Prevention Counseling Certification Course based on the CDC's Fundamentals of HIV Prevention Counseling and Partner Services Course
    - CDC's STD training modules course (CDC's Employee Development Guide)
    - CDC's Introduction to STD Interviewing (ISTDI) and Advanced STD Interviewing (ASTDI) as needed.
    - The grantee's staff functioning as first line supervisors of DIS syphilis casework need to complete CDC's Principles of STD Supervision and STD Intervention for Supervisors courses.
    - Phlebotomy training for DIS is to be provided within three (3) months of the DIS hiring date.

22. The grantee agrees that project personnel supported under this Grant Agreement shall attend and successfully complete the training programs required for this project in a time period specified by the State STD Program.

23. The State, through the STD Prevention Program, reserves the right to approve any person selected for a position supported by this Grant Agreement and to discontinue financial assistance in the event that the person fails to meet the professional standards established by the State STD Program which are hereby incorporated by reference. State approval shall not be unreasonably withheld.

24. The grantee will assure documented annual DIS visitation to CLIA approved laboratories in District 6 that perform syphilis test analysis by July 1 of each calendar year.

25. The grantee, if providing STD clinical and laboratory services, will comply with the CDC Program Operations Guidelines (POG) for STD Prevention, as well as CDC's STD Treatment Guidelines.

**GRANT AGREEMENT**
EDS # A70-0-112148

61910-573100-4003610141610
STD 223-4

This Grant Agreement, entered into by and between **the Indiana State Department of Health** (the "State") and **Planned Parenthood of Indiana, Inc.** (the "Grantee"), is executed pursuant to the terms and conditions set forth herein. In consideration of those mutual undertakings and covenants, the parties agree as follows:

## 1. Purpose of this Grant Agreement

The purpose of this Grant Agreement is to enable the State to award a grant from the State of Indiana's Federally Funded Sexually Transmitted Diseases Fund of up to $100,000 to the Grantee for eligible costs of the project (the "Project") or services as described in Attachment A of this Grant Agreement, which is attached hereto and incorporated herein. The funds shall be used exclusively in accordance with the provisions contained in this Grant Agreement.

## 2. Term

This Grant Agreement shall commence on January 1, 2010, (the Commencement Date) and shall remain in effect through December 31, 2010, (the Expiration Date). In no event shall payments be made for work done or services performed before the Commencement Date or after the Expiration Date.

## 3. Design and Implementation of Project

The Grantee shall be solely responsible for the proper design and implementation of the Project as described in the grant application and in Attachment A. The Grantee agrees to complete the Project in accordance with the plans and specifications contained in its application which is on file with the State and is incorporated by reference. Modification of the Project shall require prior written approval of the State.

## 4. Monitoring Reviews by the State

The State may conduct an on-site monitoring review of the Project. The monitoring review may document any of the following:

A. Whether Project activities are consistent with those set forth in Attachment A, the grant applications, and the terms and conditions of the Grant Agreement.

B. A complete, detailed analysis of actual state, local and/or private funds expended to date on the Project and conformity with the amounts for each budget line item as set forth in Attachment A.

C. A detailed listing of all Project costs by project budget line item which are accrued yet unpaid, if any.

A written evaluation as to the Grantee's timely progress in project management, financial management and control systems, procurement systems and methods, and performance relative to timely submission of project reports.

## 5. Payment of Grant Funds by the State

The payment of this Grant by the State to the Grantee shall be made in accordance with the following schedule and conditions:

A. This Grant Agreement must be fully executed.

B. All items required by Attachment A must be submitted to and approved by the State.

C. Any other grant conditions as specified in Attachment A must be met to the State's satisfaction.

D. The State may require evidence furnished by the Grantee that substantial progress has been made toward completion of the Project prior to making the first payment under this Grant. All payments are subject to the State's determination that the Grantee's performance to date conforms to the Project as approved, notwithstanding any other provision of this Grant Agreement.

E. If advance payment of a portion of the grant funds is permitted by statute, and the State agrees to provide such advance payment, it shall be made only upon submission of a proper claim setting out the intended purposes of those funds. After such funds have been expended, Grantee shall provide State with a reconciliation of those expenditures.

F. If this Grant Agreement is terminated by either party prior to the Expiration Date set forth in Paragraph 2 of this Grant Agreement, the State may promptly conduct an on-site monitoring of the Project and complete a Project monitoring report.

G. Failure to complete the Project and expend State, local and/or private funds in accordance with this Grant Agreement may be considered a material breach, and shall entitle the State to impose sanctions against the Grantee including, but not limited to, suspension of all grant payments, and/or suspension of the Grantee's participation in State grant programs until such time as all material breaches are cured to the State's satisfaction. Sanctions may also include repayment of all State funds expended that are not in the scope of this Project or the Budget.

H. All payments shall be made in arrears in conformance with State fiscal policies and procedures and, as required by IC 4-13-2-14.8, by electronic funds transfer to the financial institution designated by the Grantee in writing unless a specific waiver has been obtained from the Auditor of State. No payments will be made in advance of receipt of the goods or services that are the subject of this Grant except as permitted by IC 4-13-2-20 or by the statute authorizing this Grant.

6. **Audits and Maintenance of Records**

   A. Following the termination of this Grant Agreement, the Grantee shall secure an audit of grant funds. An independent public accountant or certified public accountant (Auditor) or the State Board of Accounts shall conduct this audit in accordance with Generally Accepted Government Auditing Standards ("GAGAS") and any other applicable audit guidelines or any standards specified by the State or the federal government. These standards include Indiana Code 5-11-1 and the Indiana State Board of Accounts publication "Guidelines for the Examination of the Entities Receiving Financial Assistance from Governmental Sources." The federal Office of Management and Budget (OMB) Circular A-133 (Audits of Institutions of Higher Education and Other Non-Profit Organizations) may also apply. The Grantee must submit the audit either thirty (30) days after receipt of the Auditor's report(s) or nine (9) months after the close of the audit period, whichever is earlier, unless the ISDH Audit Section provides a written waiver. The Grantee agrees to provide a readable copy, or original of all audits secured by the Grantee to meet this provision. The Grantee must provide a copy of its Audit Report to the Indiana State Department of Health, 2 North Meridian Street, Audit Section 2C99, Indianapolis, Indiana 46204. Grantee agrees to provide the Indiana State Board of Accounts an original of all financial and compliance audits and the original Grantee's "Entity Annual Report" (Form E-1). Should the Grantee be an agency of the State of Indiana or a local or quasi-governmental agency, the requirement to submit the Grantee's "Entity Annual Report" (Form E-1) to the State Board of Accounts is waived.

   A. The Grantee's audit shall be an audit of the actual entity or the distinct portion thereof that performs the functions of the Grant Agreement, and not of a parent, member, or subsidiary corporation of the Grantee, unless the Indiana State Board of Accounts or State requests an expanded audit. The audit shall include a statement from the Auditor that the Auditor has reviewed this Grant Agreement and that the Grantee is not out of compliance with the financial aspects of this Grant Agreement.

   B. The State and the Indiana State Board of Accounts reserve the right to approve any auditor who conducts the audit. If the State requests, the Grantee shall require its sub-grantees to secure audits in accordance with subparagraph A, and to timely file all reports required by the Indiana State Board of Accounts.

   C. Grantee shall maintain books, records, documents, including but not limited to statistical reports, program reports, payroll records, banking records, accounting records, and purchase orders that are sufficient to document Grantee's program and financial activities under this grant and Grantee's claims for reimbursement as required by law, and any other evidence which, according to generally accepted accounting procedures, identifies costs attributable to the services specified on Attachment A of this Grant Agreement and any other documents required under the terms of this Grant Agreement. The Grantee shall comply with the cost principles set forth in OMB Circular A-122. The Grantee shall maintain a written cost allocation plan identifying procedures for attributing costs to each component code and service.

   The State may require more restrictive fiscal accountability, beginning upon written notice, if the State determines the Grantee is financially unstable, has a history of poor accountability, or has a management system that does not meet the standards required by the State of Indiana or the United States Government.

D.  The Grantee must use internal controls that assure: 1) the reliability of financial information and records; 2) effectiveness and efficiency of operations; 3) proper execution of management's objectives; and 4) compliance with laws and regulations. Sufficient internal controls include but are not limited to segregation of duties and safeguarding controls over cash, other assets, and information processing.

E.  Upon written demand by the State, the Grantee will repay the State all money paid during any period of time when an audit showed inadequate fiscal documentation.

F.  If the State finds an audit exception, it may set off the amount against current or future allowable invoices, demand a cash payback, withhold payment of current invoices, or avail itself of any combination of the above remedies.

## 7.  Project Budget and Budget Modification

The approved Project Budget is set forth as Attachment A of this Grant Agreement.  The Grantee shall not spend more than the amount for each line item, as described in the Budget, without the prior written consent of a duly authorized representative of the State, nor shall the Project costs funded by this Grant Agreement and those funded by the local and/or private share be amended without the prior written consent of the State.

## 8.  Statutory Authority of Grantee

The Grantee expressly represents and warrants to the State that it is statutorily eligible to receive these monies and it expressly agrees to repay all monies paid to it under this Grant, should a legal determination of its ineligibility be made by any court of competent jurisdiction.

## 9.  Use of Grant Funds by Grantee

The funds received by the Grantee pursuant to this Grant Agreement shall be used only to implement DIS and PS services in accordance with program standards established by the ISDH and applicable state and federal statutes as described fully in Attachment A and for no other purpose.

## 10. Compliance with Laws

A.  The Grantee shall comply with all applicable federal, state and local laws, rules, regulations and ordinances, and all provisions required thereby to be included herein are hereby incorporated by reference. The enactment or modification of any applicable state or federal statute or the promulgation of rules or regulations thereunder after execution of this Grant shall be reviewed by the State and the Grantee to determine whether the provisions of this Grant require formal modification.

B. The Grantee and its agents shall abide by all ethical requirements that apply to persons who have a business relationship with the State as set forth in IC 4-2-6, *et seq.*, IC 4-2-7, *et seq.*, the regulations promulgated thereunder, and Executive Order 04-08, dated April 27, 2004. If the Grantee is not familiar with these ethical requirements, the Grantee should refer any questions to the Indiana State Ethics Commission, or visit the Indiana State Ethics Commission website at http://www.in.gov/ig/. If the Grantee or its agents violate any applicable ethical standards, the State may, in its sole discretion, terminate this Grant immediately upon notice to the Grantee. In addition, the Grantee may be subject to penalties under IC 4-2-6, 4-2-7, 35-44-1-3, and under any other applicable laws.

C. The Grantee certifies by entering into this Grant that neither it nor its principal(s) is presently in arrears in payment of taxes, permit fees or other statutory, regulatory or judicially required payments to the State. The Grantee agrees that any payments currently due to the State may be withheld from payments due to the Grantee. Additionally, further work or payments may be withheld, delayed, or denied and/or this Grant suspended until the Grantee is current in its payments and has submitted proof of such payment to the State.

D. The Grantee warrants that it has no current, pending or outstanding criminal, civil, or enforcement actions initiated by the State, and agrees that it will immediately notify the State of any such actions. During the term of such actions, the Grantee agrees that the State may delay, withhold, or deny work under any supplement, amendment, change order or other contractual device issued pursuant to this Grant.

E. If a valid dispute exists as to the Grantee's liability or guilt in any action initiated by the State or its agencies, and the State decides to delay, withhold, or deny work to the Grantee, the Grantee may request that it be allowed to continue, or receive work, without delay. The Grantee must submit, in writing, a request for review to the Indiana Department of Administration (IDOA) following the procedures for disputes outlined herein. A determination by IDOA shall be binding on the parties. Any payments that the State may delay, withhold, deny, or apply under this section shall not be subject to penalty or interest, except as permitted by IC 5-17-5.

F. The Grantee warrants that the Grantee and its subgrantees, if any, shall obtain and maintain all required permits, licenses, registrations, and approvals, and shall comply with all health, safety, and environmental statutes, rules, or regulations in the performance of work activities for the State. Failure to do so may be deemed a material breach of this Grant and grounds for immediate termination and denial of further work with the State.

G. The Grantee affirms that, if it is an entity described in IC Title 23, it is properly registered and owes no outstanding reports to the Indiana Secretary of State.

H. As required by IC 5-22-3-7:
   (1) The Grantee and any principals of the Grantee certify that:
      (A) the Grantee, except for de minimis and nonsystematic violations, has not violated the terms of:
         (i) IC 24-4.7 [Telephone Solicitation Of Consumers];
         (ii) IC 24-5-12 [Telephone Solicitations]; or
         (iii) IC 24-5-14 [Regulation of Automatic Dialing Machines];
         in the previous three hundred sixty-five (365) days, even if IC 24-4.7 is preempted by federal law; and

   (B) the Grantee will not violate the terms of IC 24-4.7 for the duration of the Grant, even if IC 24-4.7 is preempted by federal law.

(2) The Grantee and any principals of the Grantee certify that an affiliate or principal of the Grantee and any agent acting on behalf of the Grantee or on behalf of an affiliate or principal of the Grantee

   (A) except for de minimis and nonsystematic violations, has not violated the terms of IC 24-4.7 in the previous three hundred sixty-five (365) days, even if IC 24-4.7 is preempted by federal law; and

   (B) will not violate the terms of IC 24-4.7 for the duration of the Grant, even if IC 24-4.7 is preempted by federal law.

## 11. Drug-Free Workplace Certification

The Grantee hereby covenants and agrees to make a good faith effort to provide and maintain a drug-free workplace. Grantee will give written notice to the State within ten (10) days after receiving actual notice that the Grantee, or an employee of the Grantee in the State of Indiana has been convicted of a criminal drug violation occurring in the workplace. False certification or violation of the certification may result in sanctions including, but not limited to, suspension of grant payments, termination of the Grant and/or debarment of grant opportunities with the State of Indiana for up to three (3) years.

In addition to the provisions of the above paragraphs, if the total Grant amount set forth in this Grant Agreement is in excess of $25,000.00, Grantee hereby further agrees that this Grant Agreement is expressly subject to the terms, conditions and representations of the following Certification:

This certification is required by Executive Order No. 90-5, April 12, 1990, issued by the Governor of Indiana. Pursuant to its delegated authority, the Indiana Department of Administration is requiring the inclusion of this certification in all grants with and grants from the State of Indiana in excess of $25,000.00. No award of a grant shall be made, and no grant, purchase order or agreement, the total amount of which exceeds $25,000.00, shall be valid, unless and until this certification has been fully executed by the Grantee and made a part of the Grant Agreement as part of the Grant documents.

The Grantee certifies and agrees that it will provide a drug-free workplace by:

A. Publishing and providing to all of its employees a statement notifying them employees that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Grantee's workplace and specifying the actions that will be taken against employees for violations of such prohibition; and

B. Establishing a drug-free awareness program to inform its employees of (1) the dangers of drug abuse in the workplace; (2) the Grantee's policy of maintaining a drug-free workplace; (3) any available drug counseling, rehabilitation, and employee assistance programs; and (4) the penalties that may be imposed upon an employee for drug abuse violations occurring in the workplace; and

C. Notifying all employees in the statement required by subparagraph (A) above that as a condition of continued employment the employee will (1) abide by the terms of the statement; and (2) notify the Grantee of any criminal drug statute conviction for a violation occurring in the workplace no later than five (5) days after such conviction; and

D. Notifying in writing the State within ten (10) days after receiving notice from an employee under subdivision (C)(2) above, or otherwise receiving actual notice of such conviction; and

E. Within thirty (30) days after receiving notice under subdivision (C)(2) above of a conviction, imposing the following sanctions or remedial measures on any employee who is convicted of drug abuse violations occurring in the workplace: (1) take appropriate personnel action against the employee, up to and including termination; or (2) require such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State or local health, law enforcement, or other appropriate agency; and

F. Making a good faith effort to maintain a drug-free workplace through the implementation of subparagraphs (A) through (E) above.

## 12. Funding Cancellation

When the Director of the State Budget Agency (SBA) makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of this Grant Agreement, it shall be canceled. A determination by the Director of the SBA that funds are not appropriated or otherwise available to support continuation of performance shall be final and conclusive.

## 13. Information Technology Accessibility Standards

Any information technology related products or services purchased, used or maintained through this Grant must be compatible with the principles and goals contained in the Electronic and Information Technology Accessibility Standards adopted by the Architectural and Transportation Barriers Compliance Board under Section 508 of the federal Rehabilitation Act of 1973 (29 U.S.C. 794d), as amended. The federal Electronic and Information Technology Accessibility Standards can be found at: http://www.access-board.gov/508.htm.

## 14. Nondiscrimination

Pursuant to the Indiana Civil Rights Law, specifically including IC 22-9-1-10, and in keeping with the purposes of the federal Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act, the Grantee covenants that it shall not discriminate against any employee or applicant for employment relating to this Grant with respect to the hire, tenure, terms, conditions or privileges of employment or any matter directly or indirectly related to employment, because of the employee or applicant's: race, color, national origin, religion, sex, age, disability, ancestry, status as a veteran, or any other characteristic protected by federal, state, or local law ("Protected Characteristics"). Furthermore, Grantee certifies compliance with applicable federal laws, regulations, and executive orders prohibiting discrimination based on the Protected Characteristics in the provision of services.

The Grantee understands that the State is a recipient of federal funds, and therefore, where applicable, Grantee and any subgrantees agree to comply with requisite affirmative action requirements, including reporting, pursuant to 41 CFR Chapter 60, as amended, and Section 202 of Executive Order 11246.

### 15. Notice to Parties

Whenever any notice, statement or other communication is required under this Grant, it shall be sent to the following addresses, unless otherwise specifically advised.

A.  Notices to the State shall be sent to:

> Indiana State Department of Health
> ATTN: Contract and Audit Section
> 2 North Meridian Street, Section 2-C
> Indianapolis, IN 46204

B.  Notices to the Grantee shall be sent to:

> Planned Parenthood of Indiana, Inc.
> ATTN: Liz Carroll
> Vice President Patient Services
> 200 South Meridian Street
> #400
> Indianapolis, IN 46202

C.  As required by IC 4-13-2-14.8, payments to the Grantee shall be made via electronic funds transfer in accordance with instructions filed by the Grantee with the Indiana Auditor of State.

### 16. Order of Precedence

Any inconsistency or ambiguity in this Grant Agreement shall be resolved by giving precedence in the following order: (A) Grant Agreement, (B) Attachment(s) prepared by the State, and (C) Grantee's Grant Application. All attachments, and all documents referred to in this paragraph are hereby incorporated fully by reference.

### 17. Renewal

This Grant Agreement may be renewed under the same terms and conditions subject to the approval of the Commissioner of the Department of Administration and the State Budget Director in compliance with IC 5-22-17-4. The term of the renewed Grant Agreement may not be longer than the term of the original Grant Agreement.

### 18. Termination for Convenience

This Grant Agreement may be terminated, in whole or in part, by the State whenever, for any reason, the State determines that such termination is in the best interest of the State. Termination shall be effected by delivery to the Grantee of a Termination Notice, specifying the extent to which such termination becomes effective. The Grantee shall be compensated for completion of the Project properly done prior to the effective date of termination. The State will not be liable for work on the Project performed after the effective date of termination. In no case shall total payment made to the Grantee exceed the original grant.

### 19. Access To Records

The Grantee and its subgrantees shall maintain all books, documents, papers, accounting records, and other evidence (Records) pertaining to all costs incurred under this Grant Agreement for inspection by the State or its authorized representatives. Copies of the Records shall be furnished at no cost to the State if requested. The Grantee and its subgrantees shall make all Records available at their respective offices at all reasonable times during the Grant Agreement period and for three (3) years from the date of final payment under the Grant Agreement or longer if an audit has been completed and all audit exceptions have not been cleared by the State.

### 20. Additional Payment Terms

A. The State disburses grant funds on a cost reimbursement basis. Actual expenditures of authorized costs will be reimbursed monthly by the State upon receipt of duly executed invoices from the Grantee. Invoices are due by the 20th day after the end of each month.

B. All accounts will be closed sixty (60) days after the Expiration Date of this Grant Agreement. Any invoice submitted after sixty (60) days will not be reimbursed by the State.

C. No expenses for travel will be reimbursed unless specifically permitted under the scope of services or consideration provisions. Expenditures made by the Grantee for travel will be reimbursed at the current rate paid by the State and in accordance with the State Travel Policies and Procedures as specified in the current Financial Management Circular. Out-of-state travel requests must be reviewed by the State for availability of funds and for appropriateness per Circular guidelines.

### 21. Amendments

No alteration or variation of the terms of this Grant Agreement shall be valid unless made in writing and signed by the parties hereto. No oral understanding or agreement not incorporated herein shall be binding on any of the parties hereto. Any alterations or amendments, except a change between budget categories which requires the prior written consent of a duly authorized representative of the State, shall be subject to the contract approval procedure of the State.

### 22. Authority To Bind

The signatory for the Grantee represents that he/she has been duly authorized to execute this Grant Agreement on behalf of the Grantee and has obtained all necessary or applicable approvals to make this Grant Agreement fully binding upon the Grantee when his/her signature is affixed, and accepted by the State.

### 23. Confidentiality Of State Information

The Grantee understands and agrees that data, materials, and information disclosed to the Grantee may contain confidential and protected information. The Grantee covenants that data, material and information gathered, based upon or disclosed to the Grantee for the purpose of this Grant Agreement, will not be disclosed to or discussed with third parties without the prior written consent of the State.

The parties acknowledge that the services to be performed by Grantee for the State under this Grant Agreement may require or allow access to data, materials, and information containing Social Security numbers or other personal information maintained by the State in its computer system or other records. In addition to the covenant made above in this section and pursuant to 10 IAC 5-3-1(4), the Grantee and the State agree to comply with the provisions of IC 4-1-10 and IC 4-1-11. If any Social Security number(s) or personal information (as defined in IC 4-1-11-3) is/are disclosed by Grantee, Grantee agrees to pay the cost of the notice of disclosure of a breach of the security of the system in addition to any other claims and expenses for which it is liable under the terms of this Grant Agreement.

### 24. Disputes

A. Should any disputes arise with respect to this Grant Agreement, the Grantee and the State agree to act immediately to resolve such disputes. Time is of the essence in the resolution of disputes.

B. The Grantee agrees that, the existence of a dispute notwithstanding, it will continue without delay to carry out all of its responsibilities under this Grant Agreement that are not affected by the dispute. Should the Grantee fail to continue to perform its responsibilities regarding all non-disputed work, without delay, any additional costs incurred by the State or the Grantee as a result of such failure to proceed shall be borne by the Grantee.

C. If a party to the Grant Agreement is not satisfied with the progress toward resolving a dispute, the party must notify in writing the other party of this dissatisfaction. Upon written notice, the parties have ten (10) working days, unless the parties mutually agree to extend this period, following the notification to resolve the dispute. If the dispute is not resolved within ten (10) working days, a dissatisfied party will submit the dispute in writing according to the following procedure:

    1. The parties agree to resolve such matters through submission in writing of their dispute to the Commissioner of the Indiana Department of Administration. The Commissioner shall reduce a decision to writing and mail or otherwise furnish a copy thereof to the Grantee and the State within ten (10) working days after presentation of such dispute for action. The presentation may include a period of negotiations, clarifications, and mediation sessions and will not terminate until the Commissioner or one of the parties concludes that the presentation period is over. The Commissioner's decision shall be final and conclusive unless either party mails or otherwise furnishes to the Commissioner, within ten (10) working days after receipt of the Commissioner's decision, a written appeal. Within ten (10) working days of receipt by the Commissioner of a written request for appeal, the decision may be reconsidered. If no reconsideration is provided within ten (10) working days, the parties may mutually agree to submit the dispute to arbitration or mediation for a determination. If a party is not satisfied with the Commissioner's ultimate decision, the dissatisfied party may submit the dispute to an Indiana court of competent jurisdiction.

    2. The State may withhold payments on disputed items pending resolution of the dispute. The unintentional nonpayment by the State to the Grantee of one or more invoices not in dispute in accordance with the terms of this Grant Agreement will not be cause for Grantee to terminate this Grant Agreement, and the Grantee may bring suit to collect these amounts without following the disputes procedure contained herein.

## 25. Federal Funding Information and Compliance

a) C.F.D.A. Title – Preventive Health
Services – Sexually Transmitted
Diseases Control Grants

b) C.F.D.A No. 93.997

c) Award Name - Comprehensive
Sexually Transmitted Disease
Prevention Systems

d) Award No. <u>5H25PS504340-17</u>

e) Award Year – 01/01/10 through 12/31/10

f) Federal Agency – Department of Health &
Human Services, Public Health Service,
Centers for Disease Control & Prevention

In grants funded by the United States Department of Health and Human Services, the Grantee agrees to comply with the provisions of the Code of Federal Regulations (CFR) Title 45 Parts 74, 92, and 96, where applicable.

## 26. Federal Funds Disclosure

Any of the Grantee's statements, press releases, requests for proposals, bid solicitations, and other documents describing projects or programs supported in whole or in part by grant funds must state a) the percentage of the total costs of the program or project with federal financing; b) the amount of federal funds for the project or program; and c) the percentage and dollar amount of the total costs of the project or program financed by nongovernmental sources. "Nongovernmental sources" means sources other than state and local governments and federally recognized Indian tribes.

## 27. Federal Lobbying Requirements

A. The Grantee certifies that to the best of its knowledge and belief that no federal appropriated funds have been paid or will be paid, by or on behalf of the Grantee, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan or cooperative agreement.

B. If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this federal Grant Agreement, contract, loan, or cooperative agreement, the Grantee shall complete and submit "Disclosure Form to Report Lobbying" in accordance with its instructions.

C. The Grantee shall require that the language of subparagraphs a) and b) be included in the language of all subgrants and that all subgrantees shall certify and disclose accordingly.

## 28. Governing Laws

This Grant Agreement shall be construed in accordance with and governed by the laws of the State of Indiana and suit, if any, must be brought in the State of Indiana.

### 29. Indemnification

The Grantee agrees to indemnify, defend, and hold harmless the State, its agents, officials, and employees from all claims and suits including court costs, attorney's fees, and other expenses caused by any act or omission of the Grantee and/or its subgrantees, if any, in the performance of this Grant Agreement.  The State shall not provide such indemnification to the Grantee.

### 30. Independent Contractor

Both parties hereto, in the performance of this Grant Agreement, shall act in an individual capacity and not as agents, employees, partners, joint venturers or associates of one another. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purposes whatsoever.  Neither party will assume liability for any injury (including death) to any persons, or damage to any property, arising out of the acts or omissions of the agents, employees or subgrantees of the other party.

The Grantee shall be responsible for providing all necessary unemployment and workers' compensation insurance for the Grantee's employees.

### 31. Licensing Standards

The Grantee, its employees and subgrantees shall comply with all applicable licensing standards, certification standards, accrediting standards and any other laws, rules or regulations governing services to be provided by the Grantee pursuant to this Grant Agreement. The State will not pay the Grantee for any services performed when the Grantee, its employees or subgrantees are not in compliance with such applicable standards, laws, rules or regulations. If any license, certification or accreditation expires or is revoked, or any disciplinary action is taken against an applicable license, certification or accreditation, the Grantee shall notify the State immediately and the State, at its option, may immediately terminate this Grant Agreement.

### 32. Ownership of Documents and Materials

All documents, records, programs, data, film, tape, articles, memoranda, and other materials not developed or licensed by the Grantee prior to execution of this Grant Agreement, but specifically developed under this Grant Agreement shall be considered "work for hire" and the Grantee transfers any ownership claim to the State and all such materials will be the property of the State.  Use of these materials, other than related to Grant Agreement performance by the Grantee, without the prior written consent of the State, is prohibited.  During the performance of this Grant Agreement, the Grantee shall be responsible for any loss of or damage to these materials developed for or supplied by the State and used to develop or assist in the services provided while the materials are in the possession of the Grantee. Any loss or damage thereto shall be restored at the Grantee's expense.  The Grantee shall provide the State full, immediate, and unrestricted access to the work product during the term of this Grant Agreement.

### 33. Penalties/Interest/Attorney's Fees

The State will in good faith perform its required obligations hereunder and does not agree to pay any penalties, liquidated damages, interest or attorney's fees, except as permitted by Indiana law, in part, IC 5-17-5, IC 34-54-8, and IC 34-13-1.

Notwithstanding the provisions contained in IC 5-17-5, any liability resulting from the State's failure to make prompt payment shall be based solely on the amount of funding originating from the State and shall not be based on funding from federal or other sources.

## 34. Progress Reports

A.  The Grantee shall submit progress reports to the State upon request, unless specified otherwise in Attachment A.   The progress reports shall serve the purpose of assuring the State that work is progressing in line with the schedule and that completion can be reasonably assured on the scheduled date.

B.  The failure to provide progress reports as requested by the State is considered a material breach of the Grant Agreement and shall entitle the State to impose sanctions against the Grantee. Sanctions may include, but are not limited to, suspension of all Grant Agreement payments, and/or suspension of the Grantee's participation in State contract programs until such time as all material breaches are cured to the State's satisfaction.  Sanctions may also include repayment of all State funds expended for activities that are not in the scope of this project as set forth in Attachment A of this Grant Agreement.

## 35. Remedies Not Impaired

No delay or omission of either party in exercising any right or remedy available under this Grant Agreement shall impair any such right or remedy, or constitute a waiver of any default, or any acquiescence thereto.

## 36. Security and Privacy of Health Information

If any final regulation or body of regulations relating to the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996 ("Final HIPAA Regulations"), or any amendment or judicial or administrative interpretation of the Final HIPAA Regulations, prohibits, restricts, limits or materially and adversely affects either party's rights or obligations hereunder, the parties shall negotiate, in good faith, reasonable revisions to this Grant Agreement.

The purpose of the negotiations shall be to revise the Grant Agreement so that the affected party can act in accordance with such Final HIPAA Regulations, or amendment or judicial or administrative interpretation thereof, and avoid or mitigate such prohibition, restriction, limitation or material and adverse effect.

If the parties fail to agree to such revisions within forty-five (45) days after written notice from the affected party requesting negotiations under this paragraph, this Grant Agreement shall terminate. If so terminated the Grantee shall return or destroy all protected health information received from, created or received by the Grantee on behalf of the State. The Grantee shall retain no copies of such information in any form if feasible.  If not feasible, the Grantee bears the responsibility of ensuring that the protected health information is maintained in a secure and confidential manner.

## 37. Severability

The invalidity of any section, subsection, clause or provision of this Grant Agreement shall not affect the validity of the remaining sections, subsections, clauses or provisions of this Grant Agreement.

## 38. Taxes

The State is exempt from most state and local taxes and many federal taxes. The State will not be responsible for any taxes levied on the Grantee as a result of this Grant Agreement.

## 39. Waiver of Rights

No right conferred on either party under this Grant Agreement shall be deemed waived, and no breach of this Grant Agreement excused, unless such waiver is in writing and signed by the party claimed to have waived such right. Neither the State's review, approval or acceptance of, nor payment for, the services required under this Grant Agreement shall be construed to operate as a waiver of any rights under this Grant Agreement or of any cause of action arising out of the performance of this Grant Agreement, and the Grantee shall be and remain liable to the State in accordance with applicable law for all damages to the State caused by the Grantee's negligent performance of any of the services furnished under this Grant Agreement.

## 40. State Boilerplate Affirmation Clause

I swear or affirm under the penalties of perjury that I have not altered, modified or changed the State's Boilerplate contract clauses (as defined in the 2009 OAG/IDOA *Professional Services Contract Manual*) in any way except for the following clauses which are named below:

Access to Records
Audits and Maintenance of Records
Order of Precedence
Progress Reports
Security and Privacy of Health Information

### Non-Collusion and Acceptance

The undersigned attests, subject to the penalties for perjury, that he/she is the Grantee, or that he/she is the properly authorized representative, agent, member or officer of the Grantee, that he/she has not, nor has any other member, employee, representative, agent or officer of the Grantee, directly or indirectly, to the best of the undersigned's knowledge, entered into or offered to enter into any combination, collusion or agreement to receive or pay, and that he/she has not received or paid, any sum of money or other consideration for the execution of this Grant other than that which appears upon the face of this Grant.

### THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.

In Witness Whereof, Grantee and the State have, through their duly authorized representatives, entered into this Grant. The parties, having read and understood the foregoing terms of this Grant, do by their respective signatures dated below hereby agree to the terms thereof.

Accepted By:

~~LIZ CARROLL~~ Suzannah Wilson Overholt
VICE PRESIDENT ~~PATIENT SERVICES~~ Finance & Admin.
PLANNED PARENTHOOD OF INDIANA, INC.

DATE: 12|17|09

Certification of Funds:

ALLEN L. COLLIER
DIRECTOR OF FINANCE
DIVISION OF FINANCE
OPERATIONAL SERVICES COMMISSION
INDIANA STATE DEPARTMENT OF HEALTH

DATE: 12-22-09

Recommended and Approved By:

MICHAEL R. KISTLER
CHIEF FINANCIAL OFFICER
OPERATIONAL SERVICES COMMISSION
INDIANA STATE DEPARTMENT OF HEALTH

DATE: 12-22-09

Approved:

MARK W. EVERSON, COMMISSIONER
DEPARTMENT OF ADMINISTRATION
STATE OF INDIANA

DATE: 1.6.10

Approved:

CHRISTOPHER A. RUHL, DIRECTOR
OFFICE OF MANAGEMENT and BUDGET
STATE OF INDIANA

DATE: 1/8/10

Approved as to Form and Legality:

GREGORY F. ZOELLER
ATTORNEY GENERAL OF INDIANA

DATE: 11 Jan 10

Attachment A

Planned Parenthood of Indiana, Inc.

Amount Awarded

100,000.00

| EXPENSE | COST |
|---|---|
| Salary | $65,000.00 |
| Fringe | 14,736 |
| Supplies | 1,400 |
| Travel | 9,000 |
| Rent/Utilities | 6,864 |
| Other | 3,000 |
| | |
| **Total Expense** | **$100,000** |

1. No changes or additions to these terms may be made unless the Indiana State Department of Health (hereinafter State) Sexually Transmitted Disease (hereinafter STD) Program Director is consulted and an amendment of the Grant Agreement is executed.

2. In collaboration with the State STD Program Director, the grantee will establish objectives and set goals that are commensurate with the State and federal STD cooperative agreement objectives.

3. Grantee will be required to implement Disease Intervention Specialist (hereinafter DIS) services and Partner Services (hereinafter PS) in accordance with program standards and policy guidelines established by the ISDH and applicable state and federal statutes.

4. Grantee will integrate services for Chlamydia, gonorrhea, HIV and syphilis infections at the client level.

5. Grantees offering a full-time STD clinic will restrict DIS clinic activity to interviewing clients infected with Chlamydia, gonorrhea, HIV and syphilis only.

6. Grantees offering a full-time STD clinic will have DIS interview 100% of all clinic patients diagnosed with Chlamydia, gonorrhea, HIV and syphilis.

7. Grantee will implement partner services immediately upon receipt of notification of diagnosis.

8. Grantee will provide partner services to all newly diagnosed and assigned persons testing positive for HIV and perform any other duties for HIV positive persons assigned by the ISDH Division of HIV, STD, Viral Hepatitis, including but not limited to, asking the 4

Incidence TTH questions during their interview on an HIV positive person residing in the following counties: Blackford, Decatur, Deleware, Fayette, Franklin, Grant, Henry, Howard, Madison, Randolph, Rush, Tipton, Union, Wayne (hereinafter District 6).

9. DIS funded under this agreement will return all DIS follow-up forms generated by the HIV and STD surveillance program immediately upon closing out the assigned case to the ISDH Division of HIV, STD, and Viral Hepatitis.

10. DIS funded under this contract have 90% of identified sex and needle sharing partners to HIV examined within 7 days of assignment.

11. Grantee will link persons identified as infected with HIV to medical and prevention services in District 6.

12. Grantee will provide partner services to all newly diagnosed and assigned persons testing positive for early syphilis in District 6.

13. Grantee will provide Partner Services to a minimum of 25% of all newly diagnosed Chlamydia and gonorrhea cases in their District6, including those diagnosed in the private sector, unless otherwise negotiated with the State STD Program.

14. DIS funded under this contract will perform a minimum of 300 client interviews for Chlamydia, gonorrhea, HIV and syphilis morbidity in District 6 annually.

15. DIS funded under this contract will have 90% of identified partners to Chlamydia examined within 7 days of assignment.

16. DIS funded under this contract will have 90% of identified sex partners to gonorrhea examined within 7 days of assignment.

17. DIS funded under this contract have 90% of identified sex partners to syphilis examined within 7 days of assignment.

18. Grantee will collaborate with internal and external partners involved in all aspects of partner services, including ensuring that partner services throughout the prevention and care continuum are available for all persons infected with HIV.

19. The grantee will assure that all client interviews are correctly entered into SWIMMS no later than 15 days after the original interview.

20. Grantee will report all required information, including weekly District 6 morbidity, monthly data, quarterly performance benchmarks, and an annual evaluation to the ISDH through the SWIMSS and EvaluationWeb© system.

21. Grantee agrees to maintain client records in a secure and confidential manner. Computer systems containing client information must be protected with multiple passwords. Office

equipment that is used for storing confidential materials must be locked when not in use. Providers must adopt and adhere to written policies and procedures which specify that client information is considered confidential, privileged information. The provider must possess a written policy which limits access to client records to only designated clinic staff. Release of information to entities other than those noted herein must be preceded by the written consent of the client or legal representative, except as demanded under state statutes. These policies and procedures must include provisions for discipline should violations occur.

22. Grantee agrees to input all data upon receipt of information from the District 6 office. Quarterly performance benchmarks must be reviewed on April 15th, July 15th, October 15th, and January 15th. The annual evaluation is due to the STD Program January 15th.

23. Grantee agrees to have Internet access and meet system requirements required by the Indiana Office of Technology and Compliance when accessing SWIMMS or EvaluationWeb© system.

24. Grantee agrees to submit all HIV materials (brochures, videos, promotional, etc.) used as educational materials to the HIV Program Review Panel for approval.

25. Grantee agrees that all DIS funded under this contract will satisfactorily complete the following trainings. Even with personnel changes within the funded entity, staff will maintain the appropriate training:

- Basic HIV, STD, Viral Hepatitis, and TB Training as Recommended by CDCs Program Collaboration and Integration Services (PICS) initiative.
- Annual Confidentiality Review Webinar
- Indiana State Department of Health's HIV Prevention Counseling Certification Course based on the CDC's Fundamentals of HIV Prevention Counseling and Partner Services Course
- CDC's STD training modules course
- CDC's Introduction to STD Interviewing (ISTDI) and Advanced STD Interviewing (ASTDI) as needed.
- Grantee's staff functioning as first line supervisors of DIS syphilis casework need to complete CDC's Principles of STD Supervision and STD Intervention for Supervisors courses.
- Phlebotomy training for DIS is to be provided within three (3) months of the DIS hiring date.

22. The Grantee agrees that project personnel supported under this Grant Agreement shall attend and successfully complete the training programs required for this project in a time period specified by the State STD Program.

23. The State, through the STD Program Director, reserves the right to approve any person selected for a position supported by this Grant Agreement and to discontinue financial assistance in the event that the person fails to meet the professional standards established by the State STD Program which are hereby incorporated by reference. State approval

shall not be unreasonably withheld.

24. The Grantee will assure documented annual DIS visitation to CLIA approved laboratories in District 6 that perform syphilis test analysis by July 1 of each calendar year.

25. The Grantee, if providing STD clinical and laboratory services, will comply with the CDC Program Operations Guidelines (POG) for STD Prevention, as well as CDC's STD Treatment Guidelines.