IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| PLANNED PARENTHOOD OF INDIANA, INC., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> COMMISSIONER OF THE INDIANA STATE DEPARTMENT OF HEALTH, *et al.*, <br><br> *Defendants.* | No. 1:11-cv-630-TWP-MG |

**STATE'S BRIEF IN SUPPORT OF**
**SECOND MOTION TO VACATE INJUNCTION**

In 2011, Planned Parenthood of Indiana, Inc. brought this case challenging an Indiana statute designed to prevent the State from indirectly subsidizing abortions through state contracts and grants. Planned Parenthood alleged that the statute violated Medicaid's "any-qualified-provider" provision. This Court agreed, and after the Seventh Circuit rejected the argument that Planned Parenthood lacked a private right of action to enforce the any-qualified-provider provision, this Court entered a permanent injunction in favor of Planned Parenthood.

In 2025, the U.S. Supreme Court rejected the premise underlying this Court's injunction: It held that Planned Parenthood *cannot* enforce Medicaid's any-qualified-provider provision in federal court against a State that withdraws subsidies for abortion. *See Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 385 (2025). A week

1

later, the State filed a motion to vacate the injunction under Federal Rule of Civil Procedure 60(b)(5). Shortly thereafter, Congress enacted Section 71113 of the Act to Provide for Reconciliation Pursuant to Title II of H. Con. Res. 14 (2025) (Section 71113), which barred payment of Medicaid funds to Planned Parenthood until July 4, 2026. Pub. L. No. 119-21, § 71113, 139 Stat. 72, 300 (2025). Eventually, this Court denied the motion to vacate "without prejudice," inviting the State "to refile closer to the anticipated expiration of Section 71113." Dkt. 141 at 3.

That time is now. Section 71113 is slated to expire on July 4, 2026. Once it does, the only thing preventing Indiana from being forced to fund Planned Parenthood in violation of state law is Planned Parenthood's unilateral representation that it will "remain suspended" from Indiana Medicaid pending resolution of this motion and any appeal. Dkt. 15, *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, No. 26-1597, at 12 n.8 (7th Cir. June 5, 2026). And whether or not Congress reenacts Section 71113, the injunction still prevents the State from fully implementing its law. *See* Dkt. 107. Nothing has changed to disturb *Medina*'s conclusion that Planned Parenthood cannot enforce Medicaid's any-qualified-provider provision in federal court against a State that withdraws subsidies for abortion. *Medina*, 606 U.S. at 385. The Court should vacate its injunction under Federal Rule of Civil Procedure 60(b)(5) due to this change in law.

## BACKGROUND

This case arose out of a challenge to Indiana Code § 5-22-17-5.5, a statute designed to prevent the indirect subsidization of abortion and abortion providers. The

2

statute prohibits any "agency of the state" from contracting with or making a grant to "any entity," other than a licensed hospital or ambulatory surgical center, "that performs abortions or maintains or operates a facility where abortions are performed." Ind. Code § 5-22-17-5.5(b); *see* § 5-22-17-5.5(c)–(d) (canceling appropriations for contracts and grants that would indirectly subsidize abortions).

## I.    The Court Enjoins Enforcement of Indiana Code § 5-22-17-5.5

In 2011, Planned Parenthood of Indiana, Inc., filed this case alleging that Section 5-22-17-5.5 violated Medicaid's any-qualified-provider provision, 42 U.S.C. § 1396a(a)(23). Dkt. 1. The any-qualified-provider provision states that "any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23)(A). Planned Parenthood moved for a preliminary injunction to enjoin the Indiana statute's enforcement to the extent it would deny Planned Parenthood Medicaid funds. Dkt. 9. The State opposed, arguing (among other things) that Planned Parenthood lacked a private right of action against the State. Dkt. 30 at 4–7.

On June 24, 2011, this Court granted a preliminary injunction. Dkt. 76. The injunction barred "[a]ll attempts to stop current or future funding contracted for or due PPIN" and ordered defendants "to take all steps to insure [sic] that all monies are paid." *Id.* at 43. In granting that preliminary injunction, this Court rejected Indiana's argument that Planned Parenthood lacked a private right of action. This Court

3

ruled that "a private right of action exists under § 1983 in order to enforce the 'freedom of choice' provision." *Id.* at 10.

On appeal, the Seventh Circuit affirmed the preliminary injunction in relevant part. It rejected Indiana's argument that Planned Parenthood lacked a private right of action and ruled that "the free-choice-of-provider statute unambiguously gives Medicaid-eligible patients an individual right" enforceable under 42 U.S.C. § 1983. *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 974 (7th Cir. 2012). The State petitioned for certiorari, urging the Supreme Court to decide whether "42 U.S.C. § 1396a(a)(23) create[s] federal 'rights' in Medicaid beneficiaries that may be privately enforced under 42 U.S.C. § 1983 by Medicaid beneficiaries and providers." Pet. for Writ of Cert. at i, *Sec. of the Ind. Fam. & Soc. Servs. Admin. v. Planned Parenthood of Ind., Inc.*, No. 12-1039, 2013 WL 660665 (2013). The Court, however, denied certiorari. *Sec. of the Ind. Fam. & Soc. Servs. Admin. v. Planned Parenthood of Ind., Inc.*, 569 U.S. 1004 (2013).

On remand, the parties recognized that the Seventh Circuit's decision dictated the outcome of Planned Parenthood's challenge under the any-qualified-provider provision and tendered a proposed judgment on Planned Parenthood's claim. *See* Dkt. 106 at 3–4. This Court then entered a final judgment permanently enjoining defendants from applying "Indiana Code § 5-22-17-5.5(b)–(d) to deny Planned Parenthood of Indiana, Inc. Medicaid funding and reimbursement" and stating that the statute "violat[ed] 42 U.S.C. § 1396a(a)(23) by denying Planned Parenthood of Indiana, Inc.'s Medicaid patients a free choice of medical provider." Dkt. 107 at 1–2.

## II.    The State Moves to Vacate the Injunction

The Supreme Court has since rejected the determination that private parties can enforce 42 U.S.C. § 1396a(a)(23). In June 2025, it held that Medicaid's any-qualified-provider provision does not create an enforceable private right of action. *See Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 385 (2025). It held that Planned Parenthood South Atlantic could not sue South Carolina over a state policy nearly identical to Indiana's law. *See id.* at 364, 367–68, 385.

The State's first motion to vacate followed on July 3, 2025. Dkt. 116. The State argued that *Medina* "fundamentally changes the legal landscape" and that continued enforcement would thus be "inequitable and detrimental to the public interest." Dkt. 117 at 6. Planned Parenthood "acknowledge[d]" that "[t]he Supreme Court's decision in *Medina* . . . represent[s] a significant change in the law that may justify the vacatur of the permanent injunction and final judgment." Dkt. 120 at 6. Planned Parenthood, however, asked this Court to defer ruling on the motion because it was deciding whether to "assert additional claims" in this case and the July 21 deadline for filing a rehearing in *Medina* had not yet passed. *Id.* at 1–2.

On July 4, 2025, Congress enacted Section 71113 of the 2025 Federal Reconciliation Act. Pub. L. No. 119-21, § 71113, 139 Stat. 72, 300 (2025). Section 71113 generally forbids the use of Medicaid funds "to make payments to a prohibited entity." Pub. L. No. 119-21, § 71113. Section 71113 defines a "prohibited entity" as an entity that, "as of [October 1, 2025]," provides elective abortions; "is an organization described in section 501(c)(3) of the Internal Revenue Code"; is an "essential community

5

provider" primarily engaged in specified functions; and received over $800,000 in Medicaid funds in 2023. *Id.* at 300. A "prohibited entity" is "an entity, including its affiliates, subsidiaries, successors, and clinics," that meets these criteria, such as Planned Parenthood. *Id.* A few months later, the State notified this Court that the State had temporarily suspended Planned Parenthood's participation in Medicaid in compliance with Section 71113. Dkt. 131-1 at 2. Still restrained by the injunction, however, the State did not terminate Planned Parenthood's Medicaid contracts or cancel appropriations under Indiana Code § 5-22-17-5.5.

In response, Planned Parenthood withdrew its only remaining objection to the State's Rule 60(b)(5) motion and stated that it no longer planned to file "other claims" and would "consent to the entry of judgment in the State's favor" if "the judgment and permanent injunction [were] vacated." Dkt. 133 at 2. This Court did not respond to this concession by granting the State's motion, but instead ordered the parties to file statements answering whether Section 71113 rendered Indiana's motion moot. Dkt. 134. The parties agreed that the motion was not moot, Dkt. 135; Dkt. 136, but Planned Parenthood argued that this Court should delay further because Section 71113 meant the injunction would have "no practical impact" until July 4, 2026, and new law "could affect how this case proceeds." Dkt. 136 at 1, 3.

### III. The Court Denies the Motion to Vacate

On March 24, 2026, this Court denied the motion as "premature without prejudice to refile." Dkt. 141 at 1. This Court agreed with Planned Parenthood that the injunction would have "little to no practical effect" until Section 71113 expired and

thought it "prudent" to wait and see whether Congress enacted "another federal prohibition . . . during the intervening period." *Id.* at 2 (quoting Dkt. 136). It invited the State "to refile closer to the anticipated expiration of Section 71113," promising to decide a new motion "promptly." *Id.* at 3. The State appealed the motion's denial to the Seventh Circuit; that appeal remains pending. *See* Dkt. 142.

## ARGUMENT

The Supreme Court's decision in *Medina* and ongoing harms to State interests warrant vacatur of the permanent injunction. Under Federal Rule of Civil Procedure 60(b)(5), relief from a final judgment is warranted where "applying it prospectively is no longer equitable." That provision provides for relief "when the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). A court "abuses its discretion 'when it refuses to modify an injunction or [other] decree in light of such changes.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Agostini*, 521 U.S. at 215). Such changes require vacatur here.[1]

---

[1] Planned Parenthood has suggested that this Court may lack jurisdiction to consider this motion. Dkt. 15 at 36–37, *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, No. 26-1597, (7th Cir. June 5, 2026). That is incorrect—"[a]fter an appeal has been filed, the district court may still consider a motion for relief from judgment under [Federal Rule of Civil Procedure] 60(b)." *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008); *see also Motorola Sols., Inc. v. Hytera Comms. Corp. Ltd.*, 108 F.4th 458, 504 (7th Cir. 2024). To the extent that this Court disagrees, however, the Court may issue an "indicative ruling" under Rule 62.1 that it would grant the motion "if the appellate court specifically remands for that purpose." *Motorola Sols.*, 108 F.4th at 504. An indicative ruling would be appropriate here.

7

## I.   The Supreme Court's Decision in *Medina* Erodes the Injunction's Foundation

The Supreme Court's decision in *Medina* represents a "significant change in the law" that erodes the foundation for this Court's permanent injunction. In this case, Planned Parenthood brought a private action to enforce Medicaid's any-qualified-provider (or free-choice-of-provider) provision on the theory that Indiana Code § 5-22-17-5.5(b)–(d) violates the any-qualified-provider provision. Dkt. 1 at 11. One of Indiana's principal defenses was that the any-qualified-provider provision does not create a private right of action—a position it pressed before this Court, the Seventh Circuit, and the Supreme Court. *See* Dkt. 76 at 10; *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 976–77 (7th Cir. 2012); Pet. for Writ of Cert. at *22–28, *Sec. of the Ind. Fam. & Soc. Servs. Admin. v. Planned Parenthood of Ind., Inc.*, No. 12-1039, 2013 WL 660665 (2013). A permanent injunction was entered only after both this Court and the Seventh Circuit rejected the argument, and the Supreme Court declined to grant review. *See* Dkt. 76 at 10; *Planned Parenthood*, 699 F.3d at 974.

After *Medina*, the Seventh Circuit's and this Court's holding that § 1396a(a)(23) creates a private right of action is no longer good law. In *Medina*, the Supreme Court confronted South Carolina's determination that Planned Parenthood South Atlantic "could no longer participate in the State's Medicaid program" because Planned Parenthood provided abortions and state law "prohibit[ed] the use of . . . public funds for abortion." 606 U.S. at 364. Planned Parenthood South Atlantic sued to enjoin the State from denying it the ability to participate in Medicaid, arguing that

South Carolina's law violates 42 U.S.C. § 1396a(a)(23), and that the same statute creates a private right of action for individuals to enforce its provisions through a lawsuit. *Id.* at 365. The district court agreed and permanently enjoined South Carolina from "excluding Planned Parenthood from its Medicaid program." *Id.* at 366. The Fourth Circuit affirmed. *Id.*

The Supreme Court reversed. It explained that no private right of action will be inferred from Spending Clause legislation unless the legislation provides "'clear and unambiguous' notice that it creates a personally enforceable right." 606 U.S. at 376 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002)). "Because spending-power legislation is 'in the nature of a contract,' a grantee must 'voluntarily and knowingly' consent to answer private § 1983 enforcement suits before they may proceed." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). A private cause of action will be inferred only "in 'atypical' situations where the provision in question 'clear[ly]' and 'unambiguous[ly]' confers an individual 'right.'" *Id.* at 385 (alterations in original) (citations omitted). But the "clear and unambiguous 'rights-creating language'" that is required to provide this notice is "missing" from § 1396a(a)(23). *Id.* at 377–78 (quoting *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 186 (2023)). Thus, the Court held, no private right of action can be inferred from § 1396a(a)(23). *Id.* at 385.

*Medina*'s holding fundamentally changed the legal landscape. *Medina* expressly holds that § 1396a(a)(23) does not confer the private right of action to enforce § 1396a(a)(23) found by this Court and the Seventh Circuit. This case could not have

come out the same way if *Medina* was the prevailing law at the time this Court entered a permanent injunction. Indeed, Planned Parenthood has admitted that "*Medina* represent[s] a significant change in the law that may justify the vacatur of the permanent injunction and final judgment." Dkt. 120 at 6. It has conceded that it no longer "intend[s] to pursue . . . any other claims in this litigation," and "if the judgment and permanent injunction are vacated, [it] consent[s] to the entry of judgment in the State's favor and the closure of this case." Dkt. 133 at 2.

The injunction should be vacated.

## II.    Continued Enforcement of the Injunction Undermines Principles of Equity and Federalism

Because *Medina* expressly holds that abortion providers like Planned Parenthood have no right to enforce Medicaid's any-qualified-provider provision against States that withdraw indirect subsidies from abortion providers, the Court should vacate its permanent injunction. The Seventh Circuit has held that a "substantial federal claim [is] essential to both entry and enforcement of a consent decree." *David B. v. McDonald*, 116 F.3d 1146, 1150 (7th Cir. 1997); *see also Evans v. City of Chicago*, 10 F.3d 474, 480 (7th Cir. 1993) (en banc) (plurality op) ("[E]ntry and continued enforcement of a consent decree regulating the operation of a governmental body depend on the existence of a substantial claim under federal law."). There is no longer a substantial federal claim here.

As described above, this Court's permanent injunction rests on the premise that Planned Parenthood can enforce Medicaid's any-qualified-provider provision against the State. But now the Supreme Court has clarified that Planned Parenthood

10

cannot do so and that Indiana should never have been subject to suit in federal court. *See Medina*, 606 U.S. at 364–66, 385. That is a substantial change in law eliminating any "substantial claim under federal law" that could support the injunction's continued enforcement. *Evans*, 10 F.3d at 480. "Prospective enforcement therefore is 'inequitable' within the meaning of Rule 60(b)(5)." *Id.* And federal courts must "ensure that 'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant." *Horne v. Flores*, 557 U.S. 433, 450 (2009) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004)).

Vacatur is especially warranted here because a permanent injunction in the Medicaid context "raise[s] sensitive federalism" and separation-of-powers "concerns." *Horne*, 557 U.S. at 448. "Medicaid is cooperative federalism at work." *Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 966 (7th Cir 2025) (en banc). "If a state fails to hold up its end of the bargain, 'the typical remedy . . . is not a private cause of action' to enforce a right 'but rather action by the Federal Government to terminate funds to the State.'" *Id.* at 969 (quoting *Pennhurst*, 451 U.S. at 28). To bypass the enforcement process that Congress prescribed would "usurp[] Congress's role in creating rights and remedies," the Executive Branch's role in enforcing Medicaid, and the State's role in administering it. *Medina*, 606 U.S. at 383. As the Supreme Court itself observed in *Medina*, "separation of powers and federalism concerns" cut against permitting private enforcement of the Medicaid provision at issue here. *Id.* at 383 n.8.

Continued enforcement of the injunction does not merely interfere with federal-state arrangements. It also undermines a vital state policy in promoting "respect

11

for and preservation of prenatal life at all stages of development." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022). One of Indiana's most important public policies is to promote childbirth over abortion. *See* Ind. Code § 16-34-1-1. Indiana Code § 5-22-17-5.5 is designed to further that policy by preventing "the indirect subsidization of abortion," *Planned Parenthood*, 699 F.3d at 967—a procedure that "kills a human being," *Dobbs*, 597 U.S. at 254. By preventing Indiana from effectuating its policy, the permanent injunction "clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). It would be incompatible with traditional equitable principles and our system of government to prevent a State from enforcing laws duly enacted by the people's representatives once an injunction's legal basis has been eliminated by the country's highest court. And that harm to "the sovereign interests and accountability of state government[]," *Frew*, 540 U.S. at 441, accumulates "[t]he longer [the] injunction . . . stays in place," *Horne*, 557 U.S. at 453.

Section 71113's impending expiration raises the prospect of further harm. Even while Section 71113 is in force, Indiana cannot implement its law fully. Section 71113 only limits payment of "[f]ederal funds" to elective abortion providers like Planned Parenthood until July 4, 2026. Pub. L. No. 119-21, § 71113. By contrast, Indiana's law also covers state funds and directs the termination and cancellation of "contract[s]," "grant[s]," and "appropriation[s]." Ind. Code § 5-22-17-5.5(b)–(d). Still, Section 71113 allowed the State to temporarily suspend Planned Parenthood from Indiana Medicaid. Dkt. 131-1; Dkt. 136 at 2. But once it expires, Section 71113 will no longer prevent Medicaid dollars from flowing to Planned Parenthood. The only

12

barrier will be Planned Parenthood's unilateral representation that it will "remain suspended" from Medicaid pending a ruling on this motion and any appeal. Dkt. 15 at 12 n.8, *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, No. 26-1597 (7th Cir. June 5, 2026). Relief from the injunction is needed.

Without relief, Indiana will be unable to implement the very law that the Supreme Court permitted South Carolina to implement. That would be inequitable. This Court should vacate the injunction and "promptly" return to Indiana the power to enforce its duly enacted laws. *Horne*, 557 U.S. at 450 (quoting *Frew*, 540 U.S. at 442.

## CONCLUSION

The Court should vacate its final judgment and permanent injunction and enter judgment in favor of the State.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

JOHN LOWREY
Deputy Solicitor General

Office of the Attorney General
302 W. Washington Street
IGSC-Fifth Floor
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Defendants*

13